# The People of the State of Illinois, Defendant in Error, v. Amelia Cary, Plaintiff in Error.

## Gen. No. 7,672.

1. APPEAL AND ERROR—*abandonment or waiver of assignments of error.* Assignments of error which are not insisted upon in the arguments will be deemed to have been abandoned or waived.

2. CRIMES AND PUNISHMENT—*judicial interference with legislative punishment.* The fixing of the punishment for the violation of a penal statute is a legislative function with which the courts will not interfere unless the penalty fixed is clearly in excess of constitutional limitations.

3. CONSTITUTIONAL LAW—*penalties proportioned to nature of offense.* The penalties prescribed by Div. B of section 34, ch. 43, Cahill's Statutes, in relation to offenses for which a special penalty is not prescribed, do not render the statute obnoxious to the constitutional provision requiring penalties to be proportioned to the nature of the offense.

4. CRIMINAL PROCEDURE—*substitution of sentence to labor for imprisonment.* In cases in which imprisonment in the county jail constitutes all, or a part of the penalty, the court may substitute a sentence to labor for imprisonment in the jail.

5. CRIMINAL PROCEDURE—*imprisonment for nonpayment of fine.* The part of a judgment in a criminal prosecution committing the defendant to the county jail to work out the imposed fine and costs at the rate of $1.50 a day, improperly confused the provisions of Cahill's St. ch. 38, ¶ 383, with those of paragraph 384 and should have followed paragraph 384 by directing how the fine should be worked out at the money rate per day.

6. CRIMINAL PROCEDURE—*insufficient showing of newly-discovered evidence for new trial.* A new trial will not be granted on the ground of newly-discovered evidence in a criminal proceeding, where the defendant makes no affidavit denying knowledge of such evidence before trial, and her evidence indicates that she knew of it long before the trial and that she might, by the exercise of proper diligence, have availed herself of it at the trial.

7. CRIMINAL PROCEDURE—*saving questions for review by motion for new trial.* Any question of error in the cross-examination of witnesses in a criminal prosecution which is not raised in a written motion for a new trial must be considered as waived.

8. CRIMINAL PROCEDURE—*saving questions for review in taking liquor to jury room in liquor prosecution.* In a prosecution for illegal possession of intoxicating liquor, any error in permitting the jury to take

exhibited bottles containing liquor to the jury room cannot be considered on review, where no objections were made, no exceptions preserved, and the written motion for new trial is silent on the question of their admission in evidence as well as on any action of the court in permitting them to be taken to the jury room.

9. INTOXICATING LIQUOR—*instruction defining liquor not supported by evidence.* An instruction in a prosecution for illegal possession of intoxicating liquor that homemade whisky, commonly called hootch, is intoxicating liquor is improperly given where there is no evidence of homemade liquor or of hootch.

10. INTOXICATING LIQUOR—*improper instructions on possession as prima facie evidence.* Where the defendant introduces evidence against guilt in a prosecution for illegal possession of intoxicating liquor, it is error to instruct the jury that possession of liquor, by any person not legally permitted to possess the same, shall be prima facie evidence that such liquor is kept for the purpose of being sold or otherwise disposed of in violation of law.

11. INTOXICATING LIQUOR—*incomplete instruction on illegal possession.* It is improper to instruct the jury in a prosecution for illegal possession of intoxicating liquor that if they believe defendant possessed intoxicating liquor in violation of the prohibition law they should find her guilty, without advising them as to what constitutes possession in violation of the law.

12. CRIMINAL PROCEDURE—*instructions too elaborate on reasonable doubt.* It is erroneous to give instructions elaborating the term "reasonable doubt."

Error by defendant to the County Court of Rock Island county; the Hon. GEORGE D. LONG, Judge, presiding. Heard in this court at the December term, 1925. Reversed and remanded. Opinion filed August 4, 1927.

CLARENCE J. SCHROEDER and STEWART & KLINGBIEL, for plaintiff in error; BEN A. STEWART, of counsel.

OSCAR E. CARLSTROM, Attorney General, EDWARD C. FITCH, Assistant Attorney General, and BENJAMIN S. BELL, State's Attorney, for defendant in error.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

Plaintiff in error, hereinafter referred to as defendant, was tried in the county court of Rock Island county on an information containing two counts, the first charging the unlawful possession of intoxicating liquor and the second charging the unlawful sale of intoxicating liquor.

There was no proof of a sale, but there was of possession, and the jury found defendant guilty under the first count.

Motions for a new trial and in arrest of judgment were overruled and judgment rendered on the verdict. This writ of error was sued out by the defendant.

As punishment, the court imposed a fine of $1,000 and costs, and ordered "That the said defendant, Amelia Cary, stand committed to the county jail of Rock Island County, Illinois, and there work out said fine and costs at the rate of $1.50 per day under the direction of the sheriff, as the county board may provide for, or until the fine and costs are fully paid in this manner, or until said defendant is otherwise discharged as provided by law."

On the record there are eleven assignments of error. In the argument only five of them are insisted upon. The others will be deemed to have been abandoned or waived.

The first assignment discussed is that the judgment and sentence are illegal, unwarranted, and in violation of section 11, article 2 of the Constitution, Cahill's St. Const. Art. II, § 11, p. 12.

The penalty for the unlawful possession of intoxicating liquor, so far as applicable to this case, is fixed by Div. B of section 34, chapter 43, Smith-Hurd Statutes, Cahill's St. ch. 43, ¶ 34, in this language:

"(B) Any person violating  *  *  *  any of the provisions of this Act, for which offense a special penalty is not prescribed, shall be fined for a first offense not less than $100.00 nor more than $1,000.00,

or be imprisoned not less than sixty days, nor more than six months.''

To fix the punishment for the violation of a penal statute is a legislative function, with which the courts will not interfere unless the penalty fixed is clearly in excess of constitutional limitations. *People v. Lloyd,* 304 Ill. 23; *People v. Berglin,* 309 Ill. 488; *People v. Elliott,* 272 Ill. 592.

That the penalties prescribed by the legislature in this identical section of the statute do not render it obnoxious to the constitutional provision requiring penalties to be proportioned to the nature of the offense, has been expressly held by the Supreme Court in a recent case. *People v. Kawoleski,* 310 Ill. 498.

It follows that the court had a statutory authority to impose a fine of $1,000, and that the legislature, in vesting the court with that authority, did not exceed its constitutional powers. In fact, it appears from the argument that counsel for defendant do not challenge the power of the court to impose a fine of $1,000 and the costs. The thing they are really objecting to is the order entered by the court providing for the method of collecting such fine and costs.

In view of the confusion that seems to exist concerning punishment for misdemeanors, it may be well to review the various statutes relating thereto. In order to do so intelligently, let us first determine what is a misdemeanor.

Sections 585 and 586, chapter 38, Smith-Hurd, give us statutory definitions. Section 585, Cahill's St. ch. 38, ¶ 614: ''A felony is an offense punishable with death or by imprisonment in the penitentiary.'' Section 586, Cahill's St. ch. 38, ¶ 615: ''Every other offense is a misdemeanor.''

Section 586 goes further and specifies a class of misdemeanors, and fixes penalties for them as follows: ''Where the performance of any act is prohibited by

any statute, and no penalty for the violation of such statute is imposed, the doing of such act is a misdemeanor, and may be punished by fine not exceeding $100, or imprisonment in the county jail, not exceeding six months, or both, in the discretion of the court.''

In cases in which imprisonment in the county jail constitutes all, or a part, of the penalty, the court may substitute for imprisonment in the county jail *a sentence to labor*. The authority to substitute a sentence to labor for imprisonment in the county jail in larceny cases is found in that part of section 389, chapter 38, Cahill's St. ch. 38, ¶ 382, which prescribes the penalty for petit larceny. The authority to substitute a sentence to labor for imprisonment in the county jail, where a person is convicted of ''any misdemeanor under the criminal code,'' is found in section 390, chapter 38, Cahill's St. ch. 38, ¶ 383, in this language: ''The court in which such conviction is had, may in its discretion, instead of committing to jail, sentence such persons to labor.''

In substituting such sentence under section 390, the court may order and direct such labor to be performed:

(a) In the workhouse of any city, town or county where the conviction is had;

(b) On the streets and alleys of any city, town or the public roads of the county; the sentence may also be

(c) To such labor as the county board may provide for. In this case the labor may be ordered to be performed under the direction of the sheriff.

By section 758, chapter 38, Cahill's St. ch. 38, ¶ 783, which should be read in connection with section 390, the authority to sentence to labor is in the following language:

''Any person convicted, in a court * * * of any crime or misdemeanor, the punishment of which is confinement in the county jail, may be sentenced * * * to labor for the benefit of the county, * * * in the

workhouse, house of correction or other place provided for that purpose by the county or city authorities.''

Under this section, the authority to sentence to labor, instead of to imprisonment in the county jail, is not limited to misdemeanors, under the criminal code, but extends to any misdemeanor the punishment of which is confinement in the county jail.

The court, it seems, may sentence ''to labor'' as a substitute for ''imprisonment in the county jail,'' but not in addition to such imprisonment. *People v. Barney,* 217 Ill. App. 322.

When a sentence to labor is imposed, the court will place the convict in the keeping of some person as authorized by section 392, chapter 38, Cahill's St. ch. 38, ¶ 385, and the person in whose keeping he is placed may provide for his safe-keeping, and to that end may use balls and chains, and, if deemed necessary to prevent his escape, may ''confine him in the county jail during the night, and at any other time such prisoner cannot be kept at work.'' *People v. Barney, supra.*

While the provisions of these statutes do not apply to the instant case because there was no imprisonment in the county jail adjudged as all or any part of the punishment, they have been reviewed for the purpose of leading to a clearer understanding of the effect of statutes providing for the collection of fines imposed as punishment for misdemeanors, and particularly the effect of section 391, chapter 38, Cahill's St. ch. 38, ¶ 384.

When this fine was imposed the court had authority to order, as part of the judgment, that the defendant be committed to jail, there to remain until the fine and costs were fully paid, or until she was discharged according to law. (Section 762, chapter 38, Cahill's St. ch. 38, ¶ 787.) If that had been the judgment and order of the court, the defendant could have paid the fine and costs and been discharged from imprisonment. The fine and costs might have been collected on execu-

tion as authorized by section 764, chapter 38, Cahill's St. ch. 38, ¶ 788, and when so collected the defendant would have been entitled to her discharge from imprisonment, or defendant might have made application for discharge under section 766, chapter 38, Cahill's St. ch. 38, ¶ 790, and upon proper showing, been discharged as a pauper.

The court, when this fine was imposed, judging from the order it entered, intended that the defendant should pay it either in money or labor.

In making the order for payment in labor, in default of payment in money, the court has confused the provisions of section 390 with those of section 391. This order should have followed section 391. It should have directed that defendant work out such fine and all costs:    (a) In the workhouse of the city, town or county, or (b) in the streets and alleys of the city or town, or (c) on the public roads in the county, under the proper person in charge of such workhouse, streets, alleys or public roads, at the rate of $1.50 per day. Then the "proper person," in whose keeping the order placed her, could provide for her safe-keeping by the use of balls and chains and, if he deemed it necessary to prevent her escape, he could confine her in jail during the night, and at any other time she could not be kept at work, as provided in section 392, chapter 38.

Where a proper order is entered under section 391, requiring payment of a fine in labor at $1.50 per day, the defendant cannot secure a discharge under section 766 by showing he has "no estate wherewith to pay such fine and costs or costs only." He must nevertheless pay in labor, as provided in the order, at least unless he can show he is unable to perform labor. *People v. Jaraslowski,* 254 Ill. 299.

From the foregoing, it will be seen that section 390 authorizes the court to substitute "a sentence of labor" for "imprisonment in the county jail," while section 391 authorizes the court to order the payment of a fine in labor at $1.50 per day. It will also be seen

that the labor, in either case, shall be performed under the person in whose keeping the prisoner is placed, as authorized by either section 390 or 391 and may provide for safe-keeping of the convict in the manner and by the means specified in section 392.

The judgment in this case does not follow the statute. If that were all, we might remand the case with directions to correct the judgment. There are, however, other assignments of error requiring attention.

It is contended that a new trial should have been granted, and two reasons are assigned in support of such contention: (1) Because of newly-discovered evidence; (2) because the verdict is contrary to the evidence.

There is not a sufficient showing that the new evidence was not known to the defendant before the trial. She makes no affidavit denying such knowledge, and her evidence indicates that she knew of it long before the trial, and that she might, by the exercise of proper diligence, have availed herself of it at the trial.

The jury are the judges of the facts, and we cannot, after a careful examination of this record, say the verdict is contrary to the evidence.

It is next contended that the conduct of the State's attorney, in his cross-examination of the defendant and of the witness Fowler, constituted prejudicial error. Only one question in the cross-examination of each of them is claimed to be improper. Each question was objected to on the ground that it was irrelevant and immaterial. In each case the objection was sustained, and thereafter the subject was pursued no further by the State's attorney. Moreover, the question was not raised by the defendant in her written motion for a new trial, and must be considered as waived. *People v. Cione*, 293 Ill. 321, and cases cited.

The next contention is that the court erred in the admission of evidence offered by the prosecution; specifically, that it was improper to admit exhibit 2, a bottle with liquor in it, and exhibit 1, a jug containing

liquor, and that it was improper to permit the jury to take the exhibits to the jury room.

The exhibits were properly admitted, and it does not appear from anything contained in the abstract that the court permitted the jury to take the exhibits with them when they went to consider their verdict. If they were so taken no objections were made, no exceptions preserved, and the written motion for new trial is silent on the question of their admission, as well as on any action of the court in permitting the jury to take them to the jury room.

The holding in *People v. Cione, supra,* applies.

The last assignment of error relates to the giving of instructions offered by the People.

Instruction No. 3: "You are instructed that homemade whiskey, commonly called hootch, is intoxicating liquor."

We find no evidence in the record on which to base this instruction; no evidence of homemade liquor, nor of hootch. It simply states an abstract proposition, which has no application to the evidence in the record, and should not have been given.

Instruction 8 tells the jury that possession of liquor, by any person not legally permitted to possess liquor, shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished or otherwise disposed of in violation of the law.

This instruction is bad under the holding in *People v. Tate,* 316 Ill. at page 59, where the Supreme Court said: "When a defendant goes to trial and introduces evidence disputing the facts charged in the indictment, it is a question then whether the evidence establishes a case against him of guilt beyond a reasonable doubt, and where there is such a contest in the evidence there should be no instruction whatever given as to what constitutes a prima facie case."

The vice in instruction 15 lies in the fact that it tells the jury that if they believe defendant "possessed intoxicating liquor in violation of the prohibition law" they should find her guilty, without advising them as to what constitutes "possession of intoxicating liquor in violation of the prohibition law."

Instructions 1, 2, 4, 5, 6 and 7 are all attempts to explain and elaborate the term "reasonable doubt." The Supreme Court has, in many cases, condemned this practice, and in the case of *People v. Rogers,* 324 Ill. at pages 235–236, manifests some impatience with the continuation of such practice in the following language: "Court and counsel will do well to heed the advice of this court in many cases in which instructions concerning 'reasonable doubt' have been considered. It is a term which needs no definition, and it is erroneous to give instructions resulting in an elaboration of it."

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*